IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-03133-MEH

STEPHANIE BOOKER,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56. ECF No. 34. Plaintiff asserts four claims for relief: (1) declaratory judgment for underinsured motorist ("UIM") benefits; (2) breach of contract; (3) bad faith breach of insurance contract; and (4) unreasonable delay and denial of UIM benefits pursuant to Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116. ECF No. 4 ¶¶ 47-94. Defendant moves for summary judgment on Claims 2-4. For the reasons that follow, the Motion is **denied**.

## FINDINGS OF FACT

The Court makes the following findings of fact viewed in the light most favorable to Plaintiff, who is the non-moving party in this matter.

1. Plaintiff is a professional hairstylist and cosmetologist. ECF No. 37-16 at 16 : 1 – 17.

2. From February 2010 to February 2012, she worked "on commission" at J.C. Penney. Working on commission was favorable to Plaintiff at the time, because it allowed her to build a clientele base without owing expenses to the salon. *Id.* at 131 : 1 – 11.

3. A hairstylist can make more money by renting a booth at a salon. Under this model, Plaintiff would pay a flat rate to a salon and keep the fees she charged her clients. *Id.* at 131 : 1 – 134 : 4.

4. From February 2012 to February 2014, Plaintiff rented a booth at New York Moon Salon and Boutique. *Id.* at 130 : 7 – 13, 142 : 1 – 5. She changed salons and rented a booth at Virtue Salon from February 2014 to December 2015. *Id.* at 142 : 21 – 24.

5. On August 26, 2012, Plaintiff was involved in an automobile accident that is not the subject matter of this lawsuit. ECF No. 34 ¶ 2; ECF No. 37 ¶ 2. As will be discussed further below, the injuries Plaintiff sustained in this accident were more serious than her second accident. Plaintiff was not insured by Defendant at the time of the first accident.

6. Approximately nine months later, on June 7, 2013, Plaintiff was involved in an accident with Shaina Almer. ECF No. 34 ¶ 1; ECF No. 37 ¶ 1. At this time, Plaintiff was insured by Defendant with a policy that included $50,000.00 in UIM coverage. *See* ECF No. 37-3.

7. Before the two accidents, Plaintiff could work ten to twelve hours per day. ECF No. 37-16 at 135 : 7 – 14.

8. After the accidents, Plaintiff could only work five to six hours per day and limited the number of clients she would accept as a result. At times, her injuries would cause her to miss work entirely. *Id.* at 135 : 16 – 136 : 5, 148 : 6 – 15.

9. On September 13, 2013, Plaintiff notified Defendant of her intent to file a UIM claim if Ms. Almer's insurance was insufficient to cover her damages. ECF No. 34-2.

10. In October 2015, Plaintiff requested and received Defendant's consent to settle with Ms. Almer's insurer for the policy limit of $25,000.00. ECF No. 34 ¶¶ 8-9; ECF No. 37 ¶¶ 8-9.

11. Plaintiff resigned from Virtue Salon in December 2015 to move to Minnesota and be with her family. *Id.* at 145 : 9 – 22.

12. Despite working fewer hours, Plaintiff made more money when she began renting a booth at a salon. *See* ECF No. 34-14 at 155 : 14 – 157 : 16. That is, in 2011 and 2012, Plaintiff made approximately $13,000.00 a year, then raised her income to approximately $21,000.00 in 2013 and $17,000.00 in 2014. *Id.* at 115 : 14 – 157 : 13.

13. Plaintiff believed that the settlement with Ms. Almer's insurer did not adequately compensate her for her injuries. Thus, on September 26, 2017, she sent a demand letter to Defendant requesting her policy limit of $50,000.00 in UIM coverage. ECF No. 34-7. This demand relied on the opinion of Thomas Moore, D.O., who concluded that 80% of Plaintiff's physical injuries were attributable to the earlier 2012 accident, and only 20% of her injuries resulted from the 2013 accident. *Id.* at 12. It also included a Vocational Economic Assessment performed by Phillip Sidlow that concluded Plaintiff's lifetime earning capacity declined by $539,983.00 as a result of her injuries from both accidents. *See* ECF No. 37-10. The letter further sought reimbursement for medical expenses and non-economic damages. ECF No. 34-7 at 22.

Even discounting her damages by 80% per Dr. Moore's opinion, Plaintiff asserted that she had incurred damages that exceeded her $50,000.00 policy limit from the 2013 accident. *See id.* at 14.

14. Three days later, on September 29, 2017, Defendant sent Plaintiff a letter in which it concluded—without further explanation—Plaintiff had been adequately compensated by the underlying $25,000.00 settlement. Defendant did not offer any additional payment. ECF No. 34-8.

15. Plaintiff rejected Defendant's position in a letter dated October 3, 2017, asking that it provide its calculation of damages to justify its conclusion. ECF No. 34-9.

16. On October 19, 2017, Defendant responded with a letter containing a calculation accounting for 20% of Plaintiff's past and future medical expenses and adding $14,000.00 in "general damages" to arrive at a total evaluation of Plaintiff's damages at $24,420.88. In this letter, Defendant offered $3,000.00 to settle Plaintiff's claim. ECF No. 34-10.

17. On November 7, 2017, Plaintiff rejected the offer and disputed Defendant's conclusion that her "general damages" totaled only $14,000.00. Again, she asked Defendant to explain why it calculated her loss of earnings, pain and suffering, inconvenience, and emotional distress at the $14,000.00 amount. ECF No. 34-11. On the same day, she initiated this lawsuit in Colorado state court. ECF No. 4.

18. On November 14, 2017, Defendant responded that it did not account for any lost wages in its computation of Plaintiff's damages, because Plaintiff "actually made more money the year of [the 2013] accident and the 2 years after that" than she had made in 2011 or 2012. ECF No. 34-12.

## **LEGAL STANDARD**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."); *see also Hysten v. Burlington*

*N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

Defendant seeks summary judgment on the Colorado statutory claim and common law bad faith claim, arguing Plaintiff fails to demonstrate material factual issues as to whether it acted unreasonably. Defendant also seeks summary judgment on the breach of contract claim, asserting Plaintiff has not presented any evidence that it failed to perform under the contract.

**I.  Statutory Unreasonable Delay and Bad Faith**

Plaintiff's statutory and bad faith claims contain a common element: Plaintiff must prove Defendant acted unreasonably.[1] *Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 890 n.3 (10th Cir. 2016). At the outset, Defendant makes an argument that does not, on its own, warrant

---

[1] Plaintiff's bad faith claim contains a second element that is not present in the statutory claim. To establish bad faith, a plaintiff must prove an insurer acted unreasonably <u>and</u> that it "knowingly or recklessly disregarded the validity of the insured's claim." *Peden*, 841 F.3d at 890 (quoting *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 414 (Colo. 2004)). In this case, Defendant's argument for summary judgment addresses only the first element. *See id.* at 890 n.3 (declining to reach the second prong of a bad faith claim, because the defendant did "not develop an argument on this additional element of the common-law claim").

6

summary judgment. Defendant argues that this case presents nothing more than a dispute about the value of Plaintiff's claim. It further asserts "it is 'reasonable for an insurer to challenge claims that are fairly debatable,' and 'an insurer is under no obligation to negotiate a settlement when there is a genuine disagreement as to the amount of compensable damages payable under the terms of an insurance policy.'" ECF No. 34 at 8 (quoting *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012)).

However, presenting evidence that a claim is "fairly debatable" is not an independent basis for summary judgment. "[I]f a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable,' this weighs against a finding that the insurer acted unreasonably. Nevertheless, fair debatability is not a threshold inquiry that is outcome determinative as a matter of law." *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1226 (10th Cir. 2016) (quoting *Vaccaro*, 275 P.3d at 759-60). Thus "an insurer could unreasonably delay or deny a claim for benefits even if that claim is fairly debatable." *Id.* at 1226-27. In such a case, "[t]he [c]ourt . . . must review the remaining evidence put forward before it to determine whether a reasonable jury might conclude that [the insurer's] conduct has been unreasonable even despite the existence of a 'fairly debatable' . . . justification for its refusal to pay the claim . . . ." *Rivera v. State Farm Mut. Auto. Ins. Co.*, No. 16-cv-00227-MSK-MJW, 2017 WL 4012134, at *4 (D. Colo. Sept. 12, 2017).

To this extent, Defendant argues the Plaintiff has not presented evidence that it acted unreasonably when it denied Plaintiff's claim. "What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury." *Vaccaro*, 275 P.3d at 759. "However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo.

7

App. 2011). In Colorado, all insurance contracts carry an implied duty of good faith that requires the insurer to reasonably investigate an insured's claim. *Peden*, 841 F.3d at 890. "The reasonableness of an investigation is determined objectively under industry standards." *Id*. These industry standards can be established by expert testimony, *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 414 (Colo. 2004), or applicable state law, *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343 (Colo. 2004).

In this case, Plaintiff identifies two provisions of Colorado law that establish the standards of reasonableness. First, in Colorado, "an insurer may not deny or delay a claim without 'conducting a reasonable investigation based upon all available information.'" *Peden*, 841 F.3d at 890 (citing Colo. Rev. Stat. § 10-3-1104(1)(h)(IV)). Second, an insurer must "provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement[.]" Colo. Rev. Stat. § 10-3-1104(1)(h)(IV).

To satisfy her burden of presenting sufficient evidence to raise material factual issues as to whether Defendant acted unreasonably, Plaintiff points to Defendant's conduct as it relates to her lost wages and decreased earning capacity. First, Defendant determined that Plaintiff had not lost any wages as a result of the accidents solely because she made more money in the years following the accidents than before them. *See* ECF No. 34-12 (denying Plaintiff had lost wages because she "actually made more money the year of [the 2013] accident and the 2 years after that" than the two years before the accident). Second, Defendant appears to have disregarded the Vocational Economic Assessment performed by Phillip Sidlow. *See* ECF No. 34-8. If Defendant made any additional investigation before concluding Plaintiff had not lost any wages, it has not presented that evidence in the Motion.

8

A rational jury could conclude that Defendant's investigation of Plaintiff's lost income was unreasonable, and in *Peden*, the Tenth Circuit stated this is sufficient to survive summary judgment. In that case, a plaintiff was injured when she was a passenger in a vehicle (along with others) that was involved in an accident. 841 F.3d at 888. The man driving the vehicle had been drinking, but the plaintiff said she got in the van with the expectation that he was not going to drive anywhere—she thought the group was just gathering in the vehicle for a photograph. *Id.* Like this case, the plaintiff settled her claim with the driver's insurer and demanded payment under her UIM policy. *Id.* at 889. The insurer, like this case, denied the claim, asserting the plaintiff had been adequately compensated by the underlying settlement. *Id.* The plaintiff then sued the insurer under the same two causes of action as Plaintiff asserts here: Colorado statutory unreasonable delay and denial and common law bad faith breach of contract. *Id.*

The Tenth Circuit concluded that a rational trier of fact could determine that several aspects of the insurer's investigation of the claim were unreasonable. First, the insurer had discounted the plaintiff's claim, because it said she had assumed the risk of injury by riding in a vehicle with a drunk driver. *Id.* at 891. But the plaintiff maintained she did not assume any risk, because she did not know the man was going to drive the van at all. *Id.* The insurer determined the plaintiff knew the man was going to drive the vehicle based on a questionnaire in which she had answered that trip was "for pleasure." *Id.* at 892. But the plaintiff responded that the questionnaire presumed she knew she was going for a ride and stated she merely indicated "for pleasure" because the trip was not for business. *Id.* The Tenth Circuit concluded "that a fact-finder could fault [the insurer] for reading too much into the questionnaire without investigating further." *Id.* Along the same lines, it stated "a rational trier of fact could find that [the insurer] acted unreasonably when

9

determining without adequate investigation that [the plaintiff] had known that [the man] would drive away." *Id.*

Additionally, the insurer's valuation of the plaintiff's claim included nothing for future wage loss. *Id.* at 893. The insurer arrived at this conclusion despite the plaintiff providing "her college transcript, medical records, and photographic evidence to demonstrate future . . . wage loss." *Id.* at 894. The court concluded that "a genuine issue of material fact would exist on the reasonableness of [the insurer's] initial refusal to pay anything for . . . future wage loss." *Id.* Accordingly, it reversed the district court's decision to grant the insurer summary judgment.

In this case, a rational trier of fact could determine Defendant's conclusion that Plaintiff had not incurred any lost wages was unreasonable, when that decision was based on the lone fact that she had made more in the years following the accidents than before them. Had it conducted any investigation, Defendant might have learned that Plaintiff had changed her business model (from commission to renting a booth at a salon) that allowed her to make more money. It also may have learned that Plaintiff had reduced her working hours due to her injuries. Moreover, a reasonable jury could determine that Defendant's decision to disregard Mr. Sidlow's Vocational Economic Assessment was unreasonable.

Defendant responds by stating this case is not like *Peden*, because the plaintiff in that case had provided documents to support her lost income claim (college transcripts and medical records), and Plaintiff has provided no analogous records here. I disagree. Plaintiff provided Mr. Sidlow's Vocational Economic Assessment, which concluded Plaintiff's earning capacity declined by $539,983.00 as a result of her injuries. ECF No. 37-10 at 1. Whether Defendant's decision to dismiss this report was reasonable is a question for a jury. Defendant's argument that its conduct was reasonable because Plaintiff could have provided additional documents to support her alleged

10

damages is not relevant to whether it acted reasonably when it denied her claim. "What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury." *Vaccaro*, 275 P.3d at 759. *Peden* demonstrates that such a question is presented here.

## II. Breach of Contract

Defendant makes a cursory argument for summary judgment on Plaintiff's breach of contract claim. However, Plaintiff has presented ample evidence demonstrating material factual issues as to whether she was entitled to UIM benefits under her policy, and Defendant failed to pay those benefits. Again, this evidence is not unrebutted, and Defendant may prevail on this claim at trial. But Plaintiff has met her burden of showing that a genuine dispute of material fact exists to necessitate a trial on the claim.

## CONCLUSION

Plaintiff has presented sufficient evidence that Defendant acted unreasonably to survive summary judgment on her bad faith claim and Colorado statutory claim. Summary judgment also is not appropriate on Plaintiff's breach of contract claim. Therefore, Defendant's Motion for Summary Judgment [filed February 12, 2019; ECF No. 34] is **denied**.

Entered and dated at Denver, Colorado, this 6th day of May, 2019.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge